IN THE CIRCUIT COURT IN THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA
GENERAL CIVIL DIVISION

DAER HOLDINGS LLC, a Florida limited
liability company, MICHAEL PETERS, and
DAVID SLAVINSKY,

   Plaintiffs,

v.

CENTURY BANK FSB and CENTURY
FINANCIAL GROUP, INC., a Florida
corporation,

   Defendant.

Case No. 09-22522

Division

UCN#52200 9CA-008310xx CICI

FILED 2009 MAY -8 AM 10:20
St. Petersburg Branch
KEN BURKE CLERK OF CIRCUIT COURT

## COMPLAINT

DAER HOLDINGS LLC ("DAER"), MICHAEL PETERS ("Peters"), and DAVID SLAVINSKY ("Slavinsky"), by and through their undersigned counsel, hereby sue CENTURY BANK FSB ("Bank") and CENTURY FINANCIAL GROUP, INC. ("CFG"), and state as follows:

1. DAER is a Florida limited liability company.

2. Michael Peters is a resident of Pinellas County, Florida, and is a manager of DAER.

3. David Slavinsky is a resident of Pinellas County, Florida, and is a manager of DAER.

4. Century Bank FSB is a federally chartered savings bank.

5. Century Financial Group, Inc. is a Florida corporation with its principal place of business in Broward County, Florida.

6. This is an action for damages in excess of $15,000.00.

## Count I – Fraud in the Inducement

7. This is an action for fraud in the inducement by all plaintiffs against all defendants.

8. Plaintiffs reallege those allegations contained in paragraphs 1 through 6 as though they were fully contained herein.

9. Prior to December 26, 2006, Defendants represented to Plaintiffs that if DAER deposited its funds with Bank, that those funds would be available to DAER for withdrawal. Defendants had no intention of making the funds in the Account available to DAER for withdrawal at the time the representation was made.

10. On or about December 26, 2006, DAER established a deposit account with Bank, account number *****7723 ("Account"), on the basis that funds that DAER deposited or caused to be deposited into the Account would be available to DAER for withdrawal. By company resolution, DAER resolved that Peters and Slavinsky were to be signatories on the Account.

11. On or about December 26, 2006, DAER borrowed a $5,500,000 mortgage loan ("First Mortgage Loan") from Bank, and granted Bank a first mortgage interest ("First Mortgage") in real property in Hillsborough County, Florida described as Lots 19, 20, and 21, Block 5 of Avila Unit No. 5., according to the map or plat thereof as recorded in Plat Book 59, Page 44 of the Public Records of Hillsborough County, Florida ("Property").

12. Prior to March 31, 2006, Defendants represented to Plaintiffs that Bank would lend DAER $750,000 ("Second Mortgage Loan") against a second mortgage interest in the Property ("Second Mortgage") if DAER deposited $500,000 as an interest reserve from which monthly interest payments would be made, if DAER procured unsecured debt in the amount of $750,000 ("Unsecured Loan"), and if DAER deposited the proceeds of the Unsecured Loan in

2

the Account. According to Defendants' representations relating to the Second Mortgage Loan, DAER would have the use of $1,000,000 consisting of the $750,000 Unsecured Loan, plus the $250,000 of proceeds of the Second Mortgage Loan less the interest reserve. Defendants represented that DAER would have use of the entirety of the $1,000,000 at the time the Second Mortgage Loan was made. Defendants had no intention that DAER would have the use of the $1,000,000 at the time the representation was made.

13. Plaintiffs relied on the representations contained in paragraphs 9 and 12 ("Representations") when Plaintiffs procured the Unsecured Loan and agreed to grant the second mortgage interest to Bank. Plaintiffs communicated the substance of the Representations to the lender of the Unsecured Loan, and Plaintiffs procured the Unsecured Loan on the basis of the Representations.

14. On or before April 20, 2009, Defendants rescinded Plaintiffs' authorization to draw upon the Account.

15. Defendants knew or should have known that the Representations were false at the time they were made.

16. Defendants intended that Plaintiffs would rely on the representations to their detriment. Specifically, Defendants intended to induce Plaintiffs to (1) borrow the Unsecured Loan, by communicating the Representations to the lender of the Unsecured Loan; and (2) grant Bank the Second Mortgage.

17. Defendants have been damaged because of Plaintiffs' false representations, including but not limited to the following damages:

    a. DAER has granted Bank the First and Second Mortgages.

3

b. DAER borrowed the Unsecured Loan, deposited the proceeds in the Account, was denied access to the Account, and the lender of the Unsecured Loan has called the Unsecured Loan into default.

c. Plaintiffs' banking and business relationships have been damaged.

d. DAER's ability to operate and maintain its Property has been impaired.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants for compensatory damages, interest, attorneys' fees and costs.

### Count II – Common Law Fraud

18. This is an action for common law fraud by Peters and DAER against the Bank.

19. Plaintiffs reallege those allegations contained in paragraphs 1 through 6, and paragraphs 9 through 17, as though they were fully contained herein.

20. As a result of the Representations, DAER granted Bank the First and Second Mortgages.

21. As a result of the Representations, Peters personally guaranteed that DAER would repay the First and Second Mortgage Loans to the Bank ("Personal Guarantee").

WHEREFORE, Peters and DAER respectfully demand judgment against the Bank for the value of the Personal Guarantee and the First and Second Mortgages, respectively.

### Count III – Libel

22. This is an action for libel by all Plaintiffs against all Defendants.

23. Plaintiffs reallege those allegations contained in paragraphs 1 through 6, paragraphs 9 through 17, and paragraphs 20 and 21 as though they were fully contained herein.

24. Between April 20, 2009 and May 1, 2009, Bank returned eleven (11) checks ("Checks") unpaid that Slavinsky drew, on behalf of DAER, on the Account, despite that there

were clearly sufficient funds in the Account from which to pay all of the Checks. The Checks were drawn by Slavinsky, and made payable to Tampa Electric Company, David Park Plumbing, Heritage Propane, Avila Property Owners' Association, Kresge LLC, Terri Steffen, Orkin Pest Control (two), Aquasure, Inc., the Hillsborough County Board of County Commissioners, and Peters.

25. On or before May 6, 2009, Defendants advised the payees of each of the Checks ("Payees") and the Payees' banks which presented the Checks, that the Checks were not validly signed, and that the Checks were therefore being returned as forgeries.

26. In fact, the Checks were validly signed, according to DAER's company resolution that Slavinsky was authorized to draw checks on the Account.

27. Defendants knew or should have known that Slavinsky was authorized to draw checks on the Account.

28. Slavinsky's reputation was significantly damaged, because Defendants portrayed Slavinsky as a check forgerer.

29. Peters' reputation has been significantly damaged.

30. DAER's reputation with the Payees and the Payees' banks has been damaged, because it issued the Checks which Defendants returned.

WHEREFORE, Plaintiffs respectfully demand judgment for compensatory damages, prejudgment interest, and costs.

### Count IV -- Slander

31. This is an action for slander by all Plaintiffs against all Defendants.

5

32. Plaintiffs reallege those allegations contained in paragraphs 1 through 6, paragraphs 9 through 17, paragraphs 20 and 21, and paragraphs 24 through 30, as though they were fully contained herein.

33. On or about May 6, 2009, Melody Shimmell, a representative of Defendants, has told at least one person that "There are going to be charges against [Slavinsky and Peters] for forgery."

34. On or about May 6, 2009, Melody Shimmell, a representative of Defendants, has told at least one person that Plaintiffs "are writing checks on an escrow account, and they are going to be charged with forgery because they were not authorized to sign any checks."

35. Defendants knew or should have known that Plaintiffs did not forge any checks at the time the statements in paragraphs 33 and 34 ("Statements") were made.

36. Defendants knew or should have known that there is no basis for any charges against Plaintiffs on the basis that Plaintiffs forged one or more checks at the time the Statements were made.

37. Defendants knew or should have known that the Account was not an escrow account at the time the Statements were made.

38. Defendants knew or should have known that Slavinsky and Peters were, and remain, authorized to sign checks on the Account at the time the Statements were made.

39. Defendants knew or should have known that Slavinsky and Peters were not going to be charged with the crime of check forgery at the time the Statements were made.

WHEREFORE, Plaintiffs respectfully demand judgment for compensatory damages, prejudgment interest, and costs.

### Count V -- Conversion

40. This is an action for conversion by DAER against Bank.

41. Plaintiffs reallege those allegations contained in paragraphs 1 through 6, paragraphs 9 through 17, paragraphs 20 and 21, paragraphs 24 through 30, and paragraphs 33 through 39, as though they were fully contained herein.

42. Bank was not authorized to remove Slavinsky and Peters as authorized signatories on the Account. Bank was not authorized to deny DAER the right to withdraw funds from its Account.

43. By its actions, Bank denied DAER of its right to use and dispose of the Account balance of $206,642.41 ("Converted Funds"), permanently or for an indefinite time.

44. By issuing the Checks, DAER demanded the Converted Funds, and the demand was not met.

WHEREFORE, DAER respectfully demands judgment in the amount of $206,642.41, plus prejudgment interest, fees, and costs.

### Count VI -- Tortious Interference with Contractual Right

45. This is an action for tortious interference with contractual right by DAER against all Defendants.

46. Plaintiffs reallege those allegations contained in paragraphs 1 through 6, paragraphs 9 through 17, paragraphs 20 and 21, paragraphs 24 through 30, paragraphs 33 through 39, and paragraphs 42 through 44, as though they were fully contained herein.

47. To obtain the Unsecured Loan, DAER entered into a contract with the lender (the "Unsecured Lender") of the Unsecured Loan (the "Unsecured Loan Agreement"), to pay the Unsecured Lender the amount of the Unsecured Loan on demand.

48. Defendants knew DAER entered into the Unsecured Loan since prior to March 31, 2008, because Defendants required DAER to obtain the Unsecured Loan as a precondition to the Second Mortgage Loan.

49. Defendants intentionally procured the breach of the Unsecured Loan Agreement, by depriving DAER of access to the Account. The Unsecured Lender demanded repayment of the Unsecured Loan; DAER was unable to repay the Unsecured Loan because the Bank deprived DAER of its right to access the account and is currently in breach.

50. Defendants lacked any justification or privilege to procure the breach of the Unsecured Loan Agreement.

51. DAER suffered damages resulting from the breach of the Unsecured Loan Agreement, including owing the default interest rate under that agreement.

WHEREFORE, DAER respectfully demands judgment for compensatory damages, prejudgment interest, fees, and costs.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand jury trial on all counts so triable.

Respectfully submitted,

*David E. Hammer*
David E. Hammer, Esq.
Florida Bar No. 23173
DAVID E. HAMMER, P.A.
264 Crystal Grove Blvd.
Lutz, FL 33548
tel (813) 274-4999
fax (800) 967-7340
mail@davidhammeresq.com